In the Matter of GRAND JURY APPLICATIONS FOR COURT-ORDERED SUBPOENAS AND NONDISCLOSURE ORDERS—DECEMBER 1988 TERM.

Supreme Court, New York County, December 27, 1988

**APPEARANCES OF COUNSEL**

*Robert M. Morgenthau, District Attorney (Owen Heimer, Ed*

*Stancik, Edward Hamlin* and *Michael C. Miller* of counsel), for applicant.

**OPINION OF THE COURT**

CAROL BERKMAN, J.

The Honorable Robert M. Morgenthau, District Attorney of New York County, has applied ex parte for a number of orders in connection with ongoing or contemplated Grand Jury investigations. For the reasons set forth herein, notwithstanding this court's recognition of the power and important function of the Grand Jury, these applications must be denied.

A recent burgeoning of applications for Grand Jury subpoenas and for nondisclosure orders has caused the three Judges primarily responsible for supervising Grand Juries in New York County (that is, the Judges sitting in the three Arraignment and Assignment Parts) to inquire of the District Attorney, through the supervising Judge of the Criminal Term of this county, as to the authority for certain Grand Jury applications. The response has left this court with a renewed regard for the adversary process. For while this court has the highest respect for the Grand Jury's role in the effective investigation of crime, and for the District Attorney's function as legal advisor to the Grand Jury, it appears that certain applications, regularly made, are of dubious legality.

Until the Legislature, the various Bar Associations, and other interested trade organizations examine these issues, however, the courts will be forced to decide most of them in an ex parte vacuum. For while this court has considered various possibilities for soliciting *amicus curiae* briefs, the time pressures of Grand Jury applications make such a route unrealistic.

■ The descriptions of the applications set forth below have been tailored so as to avoid breaching the secrecy of the Grand Jury investigations. (CPL 190.50 [7].) In certain instances, the name of the bank or consumer reporting agency subpoenaed has been disclosed since those companies are clearly not the targets of the Grand Jury investigations and the revelation of their identities will not expose them to intimidation or embarrassment. While this may technically violate the section, this court rests secure on Judge Bellacosa's comment that the requirement of modifying opinions "may represent an incursion by the legislature into the independent judicial function." (Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 190.50, at 281.)

In the first matter, the District Attorney has applied for judicial indorsement of subpoenas directed to Irving Trust Co., a bank, and Trans Union Credit Information Co., Inc., a credit reporting agency. Without stating which Grand Jury is hearing the evidence or when the case will be put before a Grand Jury, the Assistant District Attorney avers that the documents subpoenaed (all credit records as to six different people and all bank account information as to one) are needed as part of an ongoing investigation. That investigation was started in 1987 by the Major Case Squad of the New York City Police Department, which has recently been joined by the State Tax Department.

The prosecutor also asks that the credit reporting agency be ordered not to "disclose the existence of this subpoena or this investigation to any person under any circumstances unless and until so authorized by further order of this court." As to the bank, the assistant asks only that it be ordered not to notify the customer for a 90-day period. In support of this part of the application, the assistant avers that the subjects of the investigation have intimidated their victims in the past. The assistant asserts that revealing the investigation might result in further intimidation against these victims for the purpose of preventing their cooperation with law enforcement.

A second subpoena, submitted for signature without a supporting affidavit, seeks all credit records for 21 people from TRW, a credit reporting agency. The subpoena bears the following "notice," which the court is asked to indorse:

"You are requested not to disclose the existence of this subpoena. Such disclosure would impede the investigation being conducted and interfere with the enforcement of law.

"So Ordered: _____

"Justice of the Supreme Court".

A third application, assertedly made pursuant to section 2-b of the Judiciary Law, the All Writs Act, seeks a nondisclosure order against certain businesses (suppliers of tobacco, food, beer, etc., and a construction company).

The court is asked to prohibit these businesses from disclosing the existence of the subpoenas for 90 days, on the grounds that the target of the investigation, suspected of fraud, is a foreign national. It is asserted that the target's partner, also a foreign national, has left the country, but no facts are set forth to support a conclusion that the partner fled to avoid prosecution. The prosecutor, without specific factual support,

recites the risk of "possible collusion" between the target and the suppliers or their employees, leading to the alteration or destruction of evidence. Finally, again in conclusory terms, the prosecutor recites the danger of witness intimidation or tampering. So far as one can determine from the supporting affirmation, the suspected crime occurred a year or more before this application for a nondisclosure order.

The affirmation does not specify the Grand Jury before which the matter is pending. Rather, the assistant states that "I am investigating allegations".

A fourth application, this time in connection with an application pursuant to CPL article 640, asks this court to certify to a New Jersey court not only the materiality of the evidence sought, but also that disclosure of "the subpoena would impede the investigation being conducted and interfere with the enforcement of law."

The requested subpoena is directed to a corporation which may be a credit reporting agency, although the supporting affidavit does not make this clear. The affidavit states that employees of the corporation have indicated that it would comply with a subpoena.

Whether or not the corporation is a credit reporting company, the facts set forth establish the materiality of the evidence sought, and would entitle the people to the court's certification of materiality. But the order submitted for signature also includes a certification that a nondisclosure order is required, and the grounds set forth for this relief are simply conclusory—to prevent the target's flight and/or the destruction of evidence.

The affidavit does not recite when the matter will be presented to a Grand Jury, but simply that a Grand Jury investigation is "about to commence."

The fifth application before the court is also made pursuant to CPL article 640. The subpoena is directed to a company which is apparently a bank, and which has already indicated a willingness to comply with an interstate subpoena, properly issued. In conclusory terms, the supporting affidavit seeks a nondisclosure order to prevent the destruction of evidence should the target "or any other individual" learn of the investigation. The supporting affidavit sets forth adequate grounds for the issuance of a certificate of materiality.

OFFICE SUBPOENAS—PHANTOM GRAND JURIES

■ It is clear that the District Attorney may not issue office

subpoenas, although the law apparently does permit him to examine, analyze and summarize documents preparatory to their presentation to a Grand Jury. *(See generally,* LaFave and Israel, Criminal Procedure § 8.8 [c].) All of the applications before the court are deficient in not reciting which Grand Jury is conducting the investigation, or, if the presentation is yet to commence, when it is contemplated. It would accordingly be premature for this court to state how long a delay in presentation might be tolerated or what sort of showing might be required to justify such delays.

Suffice it to say that when a prosecutor invokes the powers of a Grand Jury in support of an application for a subpoena, he or she must identify the Grand Jury whose power is being invoked, or at least the term in which he or she anticipates presenting the matter to a Grand Jury. The court otherwise has no way of knowing whether any particular subpoena duces tecum might be an abuse of process.

SUBPOENAS FOR CREDIT REPORTS

■ As this court has recently held *(Matter of Trans Union Credit Information Agency,* index No. 47438/88, NY County), section 380-b of the General Business Law requires an actual court order, and not just a Grand Jury subpoena, for the production of credit reports from credit reporting agencies. Reasonable grounds must be advanced before such a court order will be issued.

A Grand Jury subpoena is presumptively valid and even on a motion to quash, there is no burden on the Grand Jury (through the prosecutor, its legal advisor), to set forth reasons for its issuance. *(Virag v Hynes,* 54 NY2d 437 [1981].) But a contempt finding will not automatically follow upon a showing that the party subpoenaed has not complied with a Grand Jury subpoena absent a factual showing of relevancy *(supra,* at 445). A witness who disobeys a court order to produce evidence, on the other hand, is subject to the penalty of contempt without a further showing of the relevance of the evidence. It follows, then, that a factual showing of relevancy is required for the issuance of a court order, notwithstanding that the order is sought in connection with a Grand Jury investigation.

This court is of course aware that credit reports frequently contain financial information about the targets of investigations which may conceivably be relevant to any Grand Jury investigation. That general possibility is not sufficient to sup-

port the issuance of a court order for credit reports. While the evidentiary standards for the issuance of court orders for the production of credit reports have yet to be developed, certainly the facts set forth should be sufficient to allow the court to make an "intelligent estimate" of the specific relevance of the specific report(s) sought to the particular investigation. *(Cf., Matter of Koota v Columbo,* 17 NY2d 147, 150, *cert denied* 384 US 1001 [1966]; *Matter of Spector v Allen,* 281 NY 251, 258 [1939]* [standard for determining relevancy of evidence in a proceeding to hold witness in contempt for refusal to testify].)

BANK RECORDS

■ It appears that court orders have been sought for bank records because the banks have indicated that they consider themselves bound in this context by the Federal Right to Financial Privacy Act (12 USC § 3401 *et seq.).* That Act simply does not apply.

First of all, the enactment was designed to limit the access of "Government authority", defined as "any agency or department of the United States, or any officer, employee, or agent thereof". (12 USC § 3401 [3].) Thus, it does not restrict access by State authorities. *(Nikrasch v State,* 698 SW2d 443, 449 [Tex App, 5th Dist 1985]; *Nichols v Council on Judicial Complaints,* 615 P2d 280, 281 [Okla 1980].)

In any event, 12 USC § 3413 (i) specifically exempts Grand Jury subpoenas from the restrictions of the Act.

NONDISCLOSURE ORDERS

The Federal statute does permit "the Government authority" to apply for a delay of the various customer notice provisions of the title. (12 USC § 3409.) These notice provisions, described below, do not require the bank to make disclosure of a Grand Jury subpoena. Section 3404 (c) entitles the customer to obtain a copy of the record which the bank is required to keep of all instances in which a government authority has obtained the customer's banking records. Section 3405 (2) refers to the disclosure generally required when an administrative subpoena is served. Section 3406 (c) deals with the notice required if the records are seized pursuant to search warrant. Section 3407 (2) requires certain notices to the customer if the government authority seeks to obtain

records by means of a judicial subpoena. Section 3408 (4) requires notice to the customer if a government authority seeks records by way of a formal written request. And section 3412 concerns the notice requirements when the records are transferred to another agency or department.

In short, nothing in the Federal statute applies to a State Grand Jury subpoena; nothing in the Federal statute requires the bank to give notice to the customer upon receipt of a State Grand Jury subpoena; and nothing in the Federal statute permits a State District Attorney to apply to a State court for a nondisclosure order pursuant to 12 USC § 3409.

■ This court has found no State analogue of the Federal Right to Financial Privacy Act, although it may well be that the customer has common-law rights in this regard. *(See, Suburban Trust Co. v Waller,* 44 Md App 335, 408 A2d 758 [1979].) Those common-law rights would not defeat a Grand Jury subpoena, and apparently do not *require* that the bank notify its customer when the records are subpoenaed. *(But see, In re Grand Jury Subpoena Duces Tecum,* 575 F Supp 93, 94 [SD NY 1983].)

The Fair Credit Reporting Act, section 380-d of the General Business Law, does require that the credit reporting agency make disclosure upon the request of the consumer. Neither the State nor the Federal Fair Credit Reporting Act includes a specific provision for nondisclosure orders.

Witnesses are specifically exempted from the secrecy provisions of CPL article 190. (CPL 190.25 [4] [a]; 190.50 [7].) They are not subject to criminal prosecution for unlawful Grand Jury disclosure pursuant to Penal Law § 215.70. And while there is much that a court can do to preserve the secrecy of Grand Jury investigations *(see, e.g., Goldberg v Extraordinary Special Grand Juries,* 98 Misc 2d 624, *mod on other grounds* 69 AD2d 1 [4th Dept 1979]; *Matter of Search Warrant,* 108 Misc 2d 440 [Crim Ct, Kings County 1981, Juviler, J.]), it is at least questionable whether a court may under any circumstances order a witness not to disclose the fact that he or she has been subpoenaed or the nature of the testimony given. *(See, In re Grand Jury Proceedings,* 814 F2d 61, 69 [1st Cir 1987], and cases cited thereat; *but see, Goldstock v TRW Information Servs.,* NYLJ, Dec. 9, 1988, at 34, col 4 [Sup Ct, Westchester County, Miller, J.].)

Those cases which do permit nondisclosure orders require a

specific showing of compelling circumstances before a court will interfere with the important liberty rights implicated by such an order. None of the applications before the court are sufficiently specific to permit a finding of compelling circumstances.

Accordingly, the applications before the court are denied.